690 P.2d 42

**STATE of Arizona, Appellee,**

v.

**Jose Roberto VILLAFUERTE,
Appellant.**

**No. 6038.**

Supreme Court of Arizona,
In Banc.

Oct. 25, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Arthur G. Hazelton, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Justice.

Defendant, Jose Roberto Villafuerte, was convicted by a jury on 18 July 1983 of kidnapping, A.R.S. § 13–1304; first degree murder, A.R.S. § 13–1105(A)(2); and theft of property valued in excess of $1,000, A.R.S. § 13–1802. The trial court entered a judgment of guilt on all charges and the defendant received the following sentences: life imprisonment without possibility of parole or release for at least 25 years on the kidnapping conviction, A.R.S. § 13–604.-01(A); death on the first degree murder conviction, A.R.S. § 13–703; and 15 years imprisonment on the theft conviction to run concurrently with the kidnapping sentence, A.R.S. § 13–604(B). We have jurisdiction of this appeal pursuant to Art. 6, § 5(3) of the Arizona Constitution, and A.R.S. §§ 13–4031 and 13–4035.

Defendant raises eight issues on appeal:

1. Did the trial court improperly allow Dr. Thomas B. Jarvis, a forensic pathologist, to testify as to the results of laboratory reports not prepared by him?

2. Did the State present sufficient evidence to prove defendant guilty beyond a reasonable doubt?

3. Did the trial court err in failing to instruct the jury on the definition of intent as to the kidnapping charge?

4. Did the trial court properly instruct the jury as to the dangerous nature of the kidnapping charge?

5. Did the trial court coerce the jury into finding a unanimous verdict?

6. Is A.R.S. § 13–703, the death penalty statute, unconstitutional?

7. Did the defendant commit this murder in an especially cruel and depraved manner?

8. Was the death penalty properly imposed?

The facts necessary to a determination of these issues are as follows. On the afternoon of 22 February 1983, a Coconino County Sheriff's Deputy responded to a disturbance call in the vicinity of Drake's Siding, an unimproved area approximately 20 miles south of Ash Fork, Arizona. A search of the area uncovered a badly damaged 1978, red and white, Ford Thunderbird automobile. Villafuerte was found asleep approximately 100 feet away in a creek bed.

Villafuerte was taken into custody. A search of his person uncovered a California birth certificate bearing the name Ubaldo

Gonzalez Dominquez. A search of the vehicle uncovered a purse containing jewelry and money. A vehicle registration certificate, found on the steering column, and identification, found in the purse, indicated that both belonged to Amelia Schoville. Efforts to contact Amelia Schoville proved fruitless. Her ex-husband was, however, contacted and advised to file a missing person report, which he did.

Villafuerte was transferred to a sheriff's substation in Williams where he was advised of his rights by a Spanish speaking employee of the Williams Police Department. The following afternoon, Russell P. Schubert, then a detective with the sheriff's department, and now a special agent with the Federal Bureau of Investigation, traveled to Williams from Flagstaff for the purpose of interrogating Villafuerte about the missing person. He was accompanied by Special Agent Robert J. Prida of the F.B.I. who was enlisted to act as a translator.

Evidently, to prevent knowledge of his probation status, Villafuerte continued to maintain that his name was Dominquez. He told Schubert and Prida that he was transported to Drake's Siding after being recruited near a Prescott laundromat by two individuals who asked him to repair their car. Later Villafuerte stated that the laundromat was not in Prescott, but in Ash Fork.

Later in the afternoon Villafuerte revealed his real name and requested to speak to Special Agent Prida. During the course of a tape recorded interview, Villafuerte told Prida and Schubert that Amelia Schoville was his girlfriend. He related that they had fought in a trailer that Villafuerte was renting under the name of Ray Baca. Villafuerte insisted that Schoville attacked him with a knife after they had both been drinking. He claimed that in the course of disarming her, he had struck and kicked her several times and that she sustained a head wound when she fell against an air conditioning vent.

Villafuerte stated that he wrapped the victim's head with bedding to stop the bleeding. At the urging of two friends who he contended were present, Villafuerte claimed that he loosely bound the victim using only torn sheets to prevent her from calling the police. Villafuerte insisted that Schoville was alive and talking with him prior to the time he left. He stated that she consented to the taking of her car and that arrangements were made for her to recover it in Prescott on the following day. Villafuerte claimed to have left instructions with the two friends present in the trailer to untie Schoville once he had safely departed. Maintaining that he was concerned with the victim's welfare, Villafuerte consented to an entry of the trailer. This was fully 24 hours after he was apprehended and 48 hours after the events which he had related.

Agents Schubert and Prida contacted the Phoenix Police Department and advised it to check on the possibility of someone being in the trailer. Detective Gus Oviedo was then dispatched to the trailer. He observed a body on a bed through an opening in the door. He entered the trailer and ascertained that the victim was dead. A search warrant was then obtained. The ensuing search of the interior and vicinity surrounding the trailer failed to disclose a knife or evidence of alcohol consumption. The body was later determined to be that of Amelia Schoville. She was clad only in a blouse, bra, and panties which were inside out. Her hands had been tied tightly behind her back with strips of bed sheet. A strip of bedding also bound one of the victim's ankles at one end and her hands at the other. The decedent's thumbs were tied together with shoelaces and her entire head was wrapped in a sheet, a bed spread, and long thermal underwear, all of which were bloodstained.

A subsequent autopsy disclosed that the victim had several recent bruises and a recent abrasion on her left ankle. The victim also had a scalp laceration with an underlying hairline fracture of the skull. A ball made of a tightly wrapped strip of bed sheet was found in the victim's nasal pharynx. Dr. Thomas B. Jarvis, Maricopa

County Deputy Chief Medical Examiner, testified that the victim died as a result of gagging. Additionally, Dr. Jarvis testified that lab tests disclosed the presence of seminal fluid in the victim's vagina and also that a blood alcohol test proved negative. Defendant was tried and convicted as charged and appeals.

## EXPERT TESTIMONY

Defendant first asserts that Dr. Jarvis was improperly allowed to testify as to the results of laboratory reports not prepared by him. As authority for this proposition, defendant cites *State v. Ceja*, 113 Ariz. 39, 546 P.2d 6 (1976), in which testimony by a City of Phoenix Crime Laboratory employee as to the results of ballistic comparisons made by another employee was held to be patent hearsay not within any exception.

■ Ceja was decided prior to the enactment of Arizona's new Rules of Evidence, 17A A.R.S., in 1977. Rule 703 is now dispositive of the issue presented. It provides in pertinent part:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those * * * made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The comment to Rule 703 clearly illustrates that evidence of the type involved in this case is within the rule: "[e]vidence which is inadmissible except as it may qualify as being 'reasonably relied upon by experts in the particular field' has traditionally included such things as certain medical reports. * * *." *See also State v. Noleen*, 142 Ariz. 101, 104, 688 P.2d 993, 996 (testimony by one medical examiner as to the results of an autopsy performed by another); *State v. (Enos) Clark*, 112 Ariz. 493, 496, 543 P.2d 1122, 1125 (1975) (setting forth the federal rule subsequently adopted in Arizona); *Gaston v. Hunter*, 121 Ariz. 33, 44, 588 P.2d 326, 337 (App.1978) (relating to expert medical testimony based upon an examination of learned medical articles); *State v. Rupp*, 120 Ariz. 490, 497–98, 586 P.2d 1302, 1309–10 (App.1978) (involving testimony by Dr. Jarvis about samples he took from a deceased, as in the instant case, but which other laboratory personnel prepared). We see little to distinguish the case at bar from the foregoing authorities. We find no error.

## SUBSTANTIAL EVIDENCE

Defendant maintains that the trial court erred in failing to grant his motion for a judgment of acquittal. We do not agree.

■ A conviction will not be upset on appeal unless there is no substantial evidence to justify it. *E.g., State v. Poland*, 132 Ariz. 269, 281, 645 P.2d 784, 796 (1982); *State v. Clow*, 130 Ariz. 125, 126, 634 P.2d 576, 577 (1981); *State v. (Raymond) Tison*, 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981), cert. denied, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). Evidence is considered in the light most favorable to sustaining the conviction. *State v. Piatt*, 132 Ariz. 145, 151, 644 P.2d 881, 887 (1981); *State v. Hall*, 129 Ariz. 589, 593, 633 P.2d 398, 402 (1981); *State v. Trotter*, 110 Ariz. 61, 63, 514 P.2d 1249, 1251 (1973). With these principles in mind, we find that the jury had before it substantial evidence to decide as it did.

As to the kidnapping charge, the jury could have considered the manner in which the victim was bound and gagged and the number and seriousness of the injuries that she sustained. The fact that the victim's panties were found on her inside-out and that seminal fluid was in her vagina could have allowed the jury to infer that the victim was restrained with the intent to commit sexual assault. With substantial evidence as to the kidnapping charge, a finding of guilt on the felony murder charge could directly follow. Furthermore, substantial evidence existed for the jury to find the defendant guilty on the theft charge. The jury could have inferred that if consent was given for the taking of the car, it was not voluntary because the victim was bound at the time. Alternatively, the

jury could have found that no consent was given at all. The jury had substantial evidence upon which to base this inference in light of the fact that the victim's purse containing valuables was found in her car. Lastly, it was the jury's prerogative to disbelieve the defendant's statement that his two friends killed the victim. A conclusion that these two men did not even exist would have been justified in light of the numerous inconsistencies in the defendant's stories to the police and because the defendant provided little in the way of a description of these men.

We also reject the defendant's contention that the jury's finding of guilt on the theft charge was inconsistent with the trial judge's later finding that, for the purposes of sentencing under A.R.S. § 13–703(F)(5), the murder was not committed "as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value."

█ In sentencing, the "pecuniary value" aggravating circumstance is applied when the murder was committed for a "financial motivation." *State v. Graham*, 135 Ariz. 209, 212, 660 P.2d 460, 463 (1983); *State v. (James) Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896, cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980); *State v. Madsen*, 125 Ariz. 346, 352–53, 609 P.2d 1046, 1052–53, cert. denied, 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980). Although evidence supports the jury's verdict on the theft charge, this does not mean that the murder was necessarily committed for a "financial motivation." The trial judge was entitled to find, as he apparently did, that the defendant committed murder and then formed the intent to commit theft. This case is distinguished from *State v. Gretzler*, supra, where the defendant committed murder for the purpose of stealing his victim's car and other personal property. *See also State v. Libberton*, 141 Ariz. 132, 685 P.2d 1284 (1984); *State v. (Raymond) Tison*, supra; *State v. (James) Clark*, supra. Our holding in *State v. James*, 141 Ariz. 141, 685 P.2d 1293 (1984), in no way compels a contrary result. In

James, we held that the pecuniary gain aggravating circumstance could not be found by the trial court after the jury had acquitted the defendant on aggravated robbery and theft charges. There we were concerned that the trial court's finding refuted the jury's finding. No similar concern exists in the instant case because the respective findings of the jury and the trial court can be reconciled. The trial court merely found that while theft may have occurred, the requisite intent was not formed until after the acts constituting murder, and therefore, pecuniary gain was not a motive for the murder. *See generally State v. Gillies*, 135 Ariz. 500, 662 P.2d 1007 (1983) (overturned "pecuniary gain" finding while leaving conviction for aggravated robbery intact; remanded for resentencing on other grounds); *People v. Green*, 27 Cal.3d 1, 609 P.2d 468, 164 Cal. Rptr. 1 (1980) (for a leading discussion of robbery as an aggravating circumstance). We find no error.

## LACK OF A DEFINITION OF INTENT

The court instructed the jury using the language of the statute that:

A person commits kidnapping by knowingly restraining another person *with the intent to:*

(1) Inflict death, physical injury, a sexual offense on the victim, or to otherwise aid in the commission of a felony; or

(2) Place the victim in reasonable apprehension of imminent physical injury to the victim.

(emphasis added.)

█ Defendant contends that the trial court erred in not instructing the jury as to the definition of the phrase "with the intent to" as used in the kidnapping statute, A.R.S. § 13–1304. We do not agree for two reasons.

█ First, defense counsel failed to request a definition of the phrase and did not object to the lack of a definition in the instructions. In such a case, reversal is not mandated unless the omission is so

vital to the rights of the accused as to constitute fundamental error. *See State v. (Ricky) Tison*, 129 Ariz. 526, 538, 633 P.2d 335, 347 (1981), cert. denied, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982); *State v. Miller*, 120 Ariz. 224, 226, 585 P.2d 244, 246 (1978); *State v. Arnett*, 119 Ariz. 38, 49, 579 P.2d 542, 553 (1978); *State v. Hardy*, 112 Ariz. 205, 207, 540 P.2d 677, 679 (1975). Lack of a specific intent instruction in similar contexts has been held not to be fundamental error. *State v. Rhymes*, 129 Ariz. 56, 59, 628 P.2d 939, 942 (1981) (prosecution for first degree murder; instruction sufficient where intent was defined in layman's terms and the instruction labeled the description as intent); *State v. Finley*, 108 Ariz. 420, 421, 501 P.2d 4, 5 (1972) (prosecution for second degree rape and child molestation); *State v. Salazar*, 24 Ariz.App. 472, 476, 539 P.2d 946, 950 (1975) (prosecution for battery).

 Second, there appears to be no prejudice to the defendant. Lack of a particular instruction is not fatal where the instructions, read as a whole, sufficiently set forth the law. *E.g., State v. Axley*, 132 Ariz. 383, 392, 646 P.2d 268, 277 (1982); *State v. Rhymes*, supra, 129 Ariz. at 59, 628 P.2d at 942; *State v. (James) Clark*, supra, 126 Ariz. at 435, 616 P.2d at 895. Here, the trial court's instruction on the kidnapping charge was couched in the language of A.R.S. § 13–1304, which requires two different states of mind: (1) *knowing* restraint, and (2) *intent* to commit one of the enumerated acts. Under these instructions, we believe that jurors of average intelligence would understand that intent was different from knowledge. Furthermore, intent is a simple concept as to which jurors could attach a common meaning without a specific instruction. Accordingly, we find no error.

## THE DANGEROUSNESS INSTRUCTION

Defendant next contends that the trial court erred in instructing the jury as to the "dangerous nature" allegation of the kidnapping charge. Specifically, defendant asserts that it was improper to instruct the

jury that the "dangerous nature of the felony" includes a felony involving the use of a dangerous instrument, when the State's Allegation of Dangerousness was cast only in terms of the "intentional or knowing infliction of serious physical injury upon another." Defendant urges that this alleged error deprived him of notice that an enhanced sentence was being sought and that a new trial is mandated on all counts or, alternatively, a new sentencing. We do not agree.

 Defendant cites *State v. Barrett*, 132 Ariz. 88, 644 P.2d 242 (1982) for the proposition that a defendant must be notified that an enhanced sentence will be sought. We agree that defendant must be informed prior to trial that an enhancement of the sentence is possible. Defendant would, however, read into our holding in *Barrett*, supra, that precise statutory language must be used when an enhanced sentence is sought. We do not believe that *Barrett* requires the use of such language. In *Barrett* we stated:

In the instant case the information contains a reference to A.R.S. § 13–604. This recital of A.R.S. § 13–604 was sufficient to put petitioner on notice that the prosecutor would seek an enhanced sentence. The first requirement of A.R.S. § 13–604(K) has been met.

132 Ariz. at 89, 644 P.2d at 243 (footnotes omitted). All we held in *Barrett*, supra, was that a sufficient notice that the State will seek an enhanced punishment may be given by a statutory citation, as was done in this case, without using the exact language contained therein. However, if an allegation of dangerousness is made, no statutory citation is required. *See State v. Waggoner*, Ariz., [No. 2 CA–CR 3190, filed 13 March 1984, slip op. at 4]; *State v. Tresize*, 127 Ariz. 571, 574, 623 P.2d 1, 4 (1980). In the instant case, the State notified the defendant that an enhanced punishment was being sought. *See also State v. Parker*, 128 Ariz. 107, 110, 624 P.2d 304, 307 (App. 1980) (indictment which cited the wrong subsection of A.R.S. § 13–604 not defec-

tive), vacated on other grounds, 128 Ariz. 97, 624 P.2d 294 (1981). We find no error.

We note also that our holding in *Barrett* pertained to enhanced sentencing under A.R.S. § 13–604. In the present case, defendant's sentencing was enhanced pursuant to A.R.S. § 13–604.01. Although both A.R.S. §§ 13–604 and 13–604.01(A) rely on the same dangerousness factors to enhance punishment, the requirement that notice be contained in the indictment or information is not applicable to A.R.S. § 13–604.01. *State v. Waggoner*, supra.

## JURY COERCION

Defendant contends that the trial court coerced a hopelessly deadlocked jury into reaching a unanimous verdict. Defendant's allegation is based on the trial judge's order that the jury return for Monday deliberation when the foreman reported on Friday that the jury was deadlocked after four hours of deliberation on the kidnapping and murder charges. On Monday, after two additional hours of deliberation, the jury returned a guilty verdict on all three charges.

Rule 22.4 of the Arizona Rules of Criminal Procedure, 17 A.R.S., provides in pertinent part:

The court shall discharge the jurors when:

\*　　\*　　\*　　\*　　\*　　\*

b. *Upon expiration of such time as the court deems proper*, it appears that there is no reasonable probability that the jurors can agree on a verdict \* \* \*.

(emphasis added.) Placing emphasis on the word "shall," defendant argues that the trial court was charged with a mandatory duty to *sua sponte* declare a mistrial and discharge the jury after the jury reported that it was deadlocked. Defendant relies on *State v. Moore*, 108 Ariz. 532, 502 P.2d 1351 (1972), cert. denied, 412 U.S. 906, 93 S.Ct. 2292, 36 L.Ed.2d 971 (1973). We believe that defendant has misconstrued our holding in Moore.

First, Moore is factually distinguishable from the case before us in two regards: (a)

the trial court in that case discharged the jurors after they deliberated for over 24 hours, 20 hours more than in the instant case, and (b) the defendant in Moore was in the position of arguing the opposite position, that the trial court had acted improperly in declaring a mistrial and discharging the jury.

Second, a careful reading of Moore discloses no language that would impose a mandatory duty upon a trial judge to declare a mistrial and discharge a jury after an initial report that the jury is deadlocked. On the contrary, Moore contains language that comports with the notion that the decision to discharge a jury is within the sound discretion of the trial judge. In Moore, we quoted the following language from *Gori v. United States*, 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 904 (1961), which applies to the instant case: "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial *may* be declared \* \* \*." (emphasis added.) We went on to hold that, "[t]he issue resolves itself into whether under all the circumstances the trial judge acted in the exercise of sound discretion by declaring a mistrial." *Moore*, supra, 108 Ariz. at 535, 502 P.2d at 1354.

In the instant case, the trial judge, before ordering that the jury report for an additional day of deliberation, stated, "It is not my province to say you must or must not arrive at a verdict." Applying the "totality of the circumstances" rule to the circumstances described, *State v. Roberts*, 131 Ariz. 513, 516, 642 P.2d 858, 861 (1982), we do not believe that the jury was coerced into reaching a unanimous verdict. We find no error.

## CONSTITUTIONALITY OF THE DEATH PENALTY

Defendant contends that our death penalty statute, A.R.S. § 13–703, is unconstitutional. We have previously disposed of this question. *State v. Zaragoza*,

135 Ariz. 63, 68, 659 P.2d 22, 27, cert. denied, — U.S. —, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983); *State v. Ortiz*, 131 Ariz. 195, 206, 639 P.2d 1020, 1031 (1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982); *State v. (James) Clark*, supra, 126 Ariz. at 435, 616 P.2d at 895. Furthermore, we believe the death penalty was properly applied to the facts of this case. The record provides substantial support for the conclusion that the defendant in this case killed, attempted to kill, or intended to kill. *See Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *State v. Kinkade*, 140 Ariz. 91, 680 P.2d 801 (1984); *State v. Vickers*, 138 Ariz. 450, 675 P.2d 710 (1983). We find no error.

## THE AGGRAVATING CIRCUMSTANCES

The trial court found that the defendant committed the murder in an especially cruel and depraved manner. *See* A.R.S. § 13–703(F)(6). No mitigating circumstances were found and, accordingly, the defendant was sentenced to death pursuant to A.R.S. § 13–703. Defendant now contends that the State did not prove this aggravating circumstance beyond a reasonable doubt and, thus, that his death sentence is improper.

■ The element of cruelty focuses upon "the pain and the mental and physical distress visited upon the victims," while depravity focuses upon "the mental state and attitude of the perpetrator as reflected in his words and actions." *E.g., State v. Jeffers*, 135 Ariz. 404, 429, 661 P.2d 1105, 1130, cert. denied, — U.S. —, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983); *State v. Graham*, supra, 135 Ariz. at 212, 660 P.2d at 463. To find cruelty the State must show beyond a reasonable doubt that the victim was conscious when the acts of violence causing death were committed. *State v. Harding*, 137 Ariz. 278, 294, 670 P.2d 383, 399 (1983), cert. denied, — U.S. —, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984) [*Harding I*].

■ In the instant case, Dr. Jarvis was unable to testify as to whether the victim was conscious after she sustained the blow to the head which caused the hairline fracture. Although the method of binding and gagging in this case is very similar to that in *State v. Harding*, 141 Ariz. 492, 687 P.2d 1247 (1984) [*Harding II*] and *State v. McCall*, 139 Ariz. 147, 677 P.2d 920 (1983), because the State failed to prove beyond a reasonable doubt that the victim was conscious, the finding of cruelty cannot stand. *See Harding I*, supra.

■ The trial judge's finding of depravity can, however, be upheld. Numerous factors can be considered in making a finding of depravity. These include the infliction of gratuitous violence on the victim, the senselessness of the murder, and the helplessness of the victim. *State v. Gretzler*, 135 Ariz. 42, 52, 659 P.2d 1, 11, cert. denied, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). Although the defendant indicated that his purpose was to prevent the victim from calling the police, the photographs admitted into evidence clearly illustrate that the victim was bound to an extent far greater than was necessary to achieve this purpose. On several occasions in the past, we have found similar circumstances indicative of depravity. *Harding I*, supra; *State v. Gretzler*, supra; *State v. Steelman*, 126 Ariz. 19, 26, 612 P.2d 475, 482, cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980). Additionally, a ball of cloth was placed in the victim's nasal pharnyx to assure suffocation. Perverse gagging such as this reflects a depraved state of mind. *Harding I*, supra, 137 Ariz. at 295, 670 P.2d at 400. Lastly, the defendant did not tell the police about the victim until 24 hours after he was apprehended and 48 hours after he left the victim in that condition. Under the totality of the circumstances, the finding of depravity can be sustained.

## PROPORTIONALITY REVIEW

■ As part of our independent review of the propriety of the death sentence imposed in this case, we conduct a proportion-

**332**

ality review to determine "whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976). *Accord State v. Lambright,* 138 Ariz. 63, 77, 673 P.2d 1, 14 (1983).

■ The defendant's sentence is proportionate to sentences imposed by this state on other defendants for murders committed in a similar manner. We have approved imposition of the death penalty in several cases solely involving the "heinous, cruel, or depraved" aggravating circumstance. *State v. Chaney,* 141 Ariz. 295 686 P.2d 1265 (1984); *State v. James,* supra; *State v. (Robert) Smith,* 138 Ariz. 79, 673 P.2d 17 (1983); *State v. Lambright,* supra; *Jeffers,* supra; *State v. Bishop,* 127 Ariz. 531, 622 P.2d 478 (1980); *State v. Ceja,* 126 Ariz. 35, 612 P.2d 491 (1980); *State v. Knapp,* 114 Ariz. 531, 562 P.2d 704 (1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Furthermore, we have on prior occasions upheld sentences of death in cases involving perverse gagging. *Harding II,* supra; *McCall,* supra; *Harding I,* supra.

We have reviewed the entire record pursuant to A.R.S. § 13–4035 and have found no reversible error. The finding of cruelty as an aggravating circumstance is reversed, but the finding of depravity is affirmed. No mitigating circumstances sufficient to outweigh the aggravating circumstances have been found.

The judgments and sentences are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.