778 P.2d 1278

**STATE of Arizona, Appellee,**

v.

**William Kelly MICHAEL, Appellant.**

**Nos. 1 CA–CR 88–188, 1 CA–CR 88–189 and 1 CA–CR 88–190.**

Court of Appeals of Arizona, Division 1, Department A.

June 22, 1989.

Review Denied Sept. 26, 1989.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., and Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

George M. Sterling, Jr., Phoenix, for appellant.

## OPINION

GERBER, Judge.

Appellant William Kelly Michael (defendant) was found to have committed a series of crimes involving 16 victims in 12 incidents. A jury convicted him of 61 felonies: 14 counts of kidnapping, 1 count of armed burglary, 17 counts of sexual assault, 10 counts of first degree burglary, 1 count of second degree burglary, 1 count of aggravated assault, 1 count of robbery, 4 counts of attempted sexual assault, 10 counts of sexual abuse, 1 count of attempted armed robbery, and 1 count of unlawful flight. The trial court sentenced him to aggravated consecutive sentences totalling 1,540.5 years imprisonment. On appeal, he raises four issues:

(1) Does a defendant's filing of a bar complaint against his attorney require the trial court to remove the attorney?

(2) Did the trial court coerce the jury to reach a verdict?

(3) Did the prosecution present substantial evidence that defendant used a knife in assaulting two of his victims?

(4) Did the trial court correctly instruct the jury on the issue of dangerousness?

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Defendant first contends that the trial court denied him effective counsel when it refused to allow his attorney to withdraw after defendant filed a bar complaint against him. According to defendant, the mere filing of the complaint created a conflict of interest between defendant and his attorney that required the attorney's removal.

In order to demonstrate ineffective assistance of counsel due to conflict of interest, defendant must show (1) an actual conflict, and (2) that the conflict had an adverse effect. *State v. Jenkins*, 148 Ariz. 463, 466, 715 P.2d 716, 719 (1986). *See also Burger v. Kemp*, 483 U.S. 776, 783–784, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638, 650 (1987); *Cuyler v. Sullivan*, 446 U.S. 335, 348–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333, 346–47 (1980). The record supports the trial court's determination that counsel's withdrawal was not required. Defendant had been dissatisfied with various attorneys prior to the filing of the bar complaint against this public defender. A few months after his arrest, he asked the trial court to remove the two public defenders then representing him, Stephen Rempe and Christopher Howard. He later withdrew these motions and subsequently hired a private attorney to replace the public defenders.[1] Soon after his retention, private counsel moved to withdraw, in part because defendant had become dissatisfied with counsel's representation and had filed a bar complaint against him. The trial court permitted private counsel to withdraw but warned defendant that the next lawyer appointed would be the last the court would appoint. The trial court then reappointed the public defender's office to represent defendant, and attorneys Rempe and Howard were again assigned to defendant's case. Shortly thereafter, Rempe and Howard moved to withdraw because defendant indicated he had filed a bar complaint against Howard which also mentioned Rempe. The trial court denied the motion.

Over the next few months, defendant appeared in court on several occasions with either Rempe or Howard. On one occasion, he stated that he had a lot of confidence in Rempe's abilities. When a firm trial date was set, however, he again moved to remove Rempe and Howard, and Howard

---

1. In the interim, defendant filed another motion seeking to remove Rempe. The court declined to rule on defendant's motion until completion of the pending Rule 11 proceedings. Apparently, the trial court had yet to rule on this motion when defendant retained private counsel.

himself moved to withdraw.[2] At the hearing on these motions, Howard claimed that defendant refused to talk to him, and defendant claimed that Howard was trying to coerce him into accepting a plea. The trial court refused to remove Howard and ordered him to prepare for trial.

Four days later, Howard again moved to withdraw, citing conflict of interest due to a bar complaint defendant had filed against him. After the hearing on Howard's motion, the trial court entered an extended minute entry requiring Howard to continue his representation, stating:

> This Court is extremely concerned that to allow a mere filing of a Bar Complaint to mandate withdrawal of counsel would have a chilling effect upon the efficient administration of the criminal justice system, not to mention the Court's ability to conduct jury trials in an efficient and timely fashion.
>
> \* \* \* \* \* \*
>
> The Court has had no substantive facts presented to it from which to determine the existence of an irreconcilable conflict of interest; further, based upon the proceedings in this case, the Court finds that the filing of a Bar Complaint against the Public Defender is an intentional attempt by the Defendant to delay the trial and subvert the criminal justice system.

After Howard's motion was denied, defendant filed a Rule 10.1 motion for change of judge, claiming among other things that the trial judge was biased because of her refusal to allow Howard to withdraw. At the hearing on that motion conducted by the presiding judge of the criminal department, defendant stated that Howard was a good attorney, but he felt that Howard did not like him. Because of their "personal differences," defendant stated, he felt that Howard would not do a good job for him. The presiding judge denied defendant's Rule 10.1 motion and ordered the matter returned to the original trial judge.

Later that same day during a discussion of pretrial matters, Howard told the trial judge that he and defendant had a coopera-tive and productive relationship. Defendant again told the trial judge that he believed Howard was a good attorney.

We see no abuse of discretion in the trial court's refusal to find an actual conflict of interest preventing Howard from representing defendant. The Arizona Rules of Professional Conduct define conflict of interest to include the situation where "a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests." Rule 1.7, comment. The only reasons appearing in the record for defendant to remove Howard were defendant's belief that Howard was trying to force him into a plea agreement, as well as defendant's feeling that Howard did not like him. Although Howard acknowledged his difficulty in representing defendant because of the bar complaint filed against him, he also told the trial judge that he and defendant had a cooperative and productive relationship.

When an actual conflict exists, defendant must also demonstrate that the conflict adversely affected his lawyer's performance in order to prevail on a claim of ineffective assistance of counsel. *Burger v. Kemp; Cuyler v. Sullivan; United States v. Mouzin,* 785 F.2d 682, 699 (9th Cir.1986), *cert. denied,* 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986). This defendant has not demonstrated any adverse effect from any alleged conflict of interest created when he filed a bar complaint against Howard. Our review of the record finds none.

A criminal defendant does not have a Sixth Amendment right to be represented by a particular appointed attorney. *State v. Evans,* 125 Ariz. 401, 404, 610 P.2d 35, 38 (1980). Nor does the Sixth Amendment guarantee a "meaningful relationship" between defendant and his counsel. *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *State v. Caperon,* 151 Ariz. 426, 427, 728 P.2d 296, 297 (App. 1986).

As a matter of public policy, a defendant's filing of a bar complaint against his

---

**2.** Rempe apparently was no longer on the case at this point in time.

attorney should not mandate removal of that attorney. A ruling to the contrary would encourage the filing of groundless bar complaints by defendants whose only motivation is to delay their own day of reckoning. *See State v. Sinclair*, 46 Wash. App. 433, 730 P.2d 742 (1986), *review denied*, 108 Wash.2d 1006 (1987); *People v. Gardner*, 5 Ill.Dec. 701, 47 Ill.App.3d 529, 362 N.E.2d 14 (1977). On this record, we find no abuse of discretion in the refusal to permit counsel to withdraw.

### COERCION OF JURY VERDICT

 Defendant also argues that the trial court's response to a question asked by the jury during its deliberations was impermissibly coercive. During its deliberations, the jury sent the trial court a note which read:

If we do not agree on one incident, does the whole case need to be retried?

The court discussed the note with the prosecutor and defense counsel, and all agreed to give the following answer to the jurors' question:

You are instructed that it is your duty to reach a verdict, if possible, on each count. Thank you.

The jury returned their verdicts approximately four hours later.

Case law gives guiding principles in this area. "A trial judge does not ... have free reign in attempting to get the jury to agree on a verdict." *State v. McCutcheon*, 150 Ariz. 317, 319, 723 P.2d 666, 668 (1986). A conviction will be reversed if the "cumulative effect of the trial court's actions had a coercive influence upon the jury." *State v. Roberts*, 131 Ariz. 513, 515, 642 P.2d 858, 860 (1982). "The test of coerciveness is whether the trial court's actions or remarks, viewed in the totality of circumstances, displaced the independent judgment of the jurors." *McCutcheon*, 150 Ariz. at 320, 723 P.2d at 669.

Examining the totality of the circumstances here, we find no such coercive effect. The trial court instructed the jury prior to deliberating as follows:

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or the effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. All twelve of you must agree on a verdict. All twelve of you must agree whether the verdict is 'guilty' or 'not guilty.' When you go to the jury room, you will choose a foreman who will be in charge during your deliberations and who will sign any verdict.

Although defendant did not object to this instruction, he now also argues that the trial court committed fundamental error in giving it and in failing to give a further instruction regarding multiple counts.

Ordinarily, the failure to object at trial to an instruction waives the issue on appeal unless fundamental error is involved. *See State v. Kinkade*, 140 Ariz. 91, 94, 680 P.2d 801, 804 (1984). Fundamental error exists where the error goes to the foundation of the case or deprives the defendant of a right essential to his defense. *State v. Allen*, 157 Ariz. 165, 170, 755 P.2d 1153, 1158 (1988).

Nothing in the given instruction is fundamentally erroneous. We do not believe the jury was confused by the singular form of the word "verdict" in the instruction given or in the court's answer to its question. The jury was given separate forms of verdict of guilty and not guilty on each count on the nondangerous charges. On the counts alleged to be dangerous, the jury was given three forms of verdict on each count—not guilty, guilty nondangerous, and guilty dangerous. Speculation about confusion is insufficient to establish actual jury confusion. *See State v. Walton*, 159 Ariz. 571, 578, 769 P.2d 1017, 1024 (1989).

Finally, the trial court's use of the words "if possible" eliminates any coercive suggestion in the court's note. Unlike the court in *McCutcheon*, the trial court did not know the division of the jury, nor was there any assertion of jury deadlock. We do not find that the trial court stated that it desired a conviction. We thus find no reversible error. *McCutcheon*, 150 Ariz. at 320, 723 P.2d at 669.

## SUFFICIENCY OF THE EVIDENCE

■ Defendant also claims that the prosecution failed to present evidence that he used, exhibited, or possessed a knife during his assaults on two of the victims, Linda P. and Katy M. When the evidence supporting a verdict is challenged on appeal, this court does not re-weigh the evidence. *See State v. Tison*, 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981). Rather, we determine whether the essential elements of the crime can be found in the evidence beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Hall*, 129 Ariz. 589, 593, 633 P.2d 398, 402 (1981). The evidence is viewed in a light most favorable to sustaining the verdict, and all reasonable inferences will be resolved against defendant. *Tison, supra; Hall, supra.*

### Verdicts Involving Victim Katy M.

Katy M. testified that a man broke into her apartment during the night, taped her hands behind her back, and was about to put a pillowcase over her head before he was scared away by her roommate. Although she did not remember seeing a knife, defendant told her he had one and "to shut up and not to scream." Defendant's own statement about possessing a knife was sufficient evidence that a knife was used. *See State v. Bice*, 127 Ariz. 312, 315, 620 P.2d 227, 230 (App.1980) (the fact that the victim does not actually see the weapon itself is of no import in determining whether a deadly weapon has been used or exhibited to justify an allegation of dangerousness pursuant to A.R.S. § 13–604(K)).

### Verdicts Involving Victim Linda P.

Linda P. testified that a man broke into her apartment during the night and taped her hands behind her back. She testified that she did not see a knife, but she felt the man cut, rather than tear, the tape on her wrists. Officer Charles Miller of the Tempe Police Department identified the tape from Ms. P.'s wrists and pointed out to the jury where it had been cut. This testimony is sufficient evidence for the conclusion that defendant used a knife. *See generally Bice, supra.*

## INSTRUCTION ON DANGEROUSNESS

■ The state filed an allegation that certain offenses [3] charged were dangerous because they involved the use or exhibition of a deadly weapon or dangerous instrument, i.e., a knife. The trial court instructed the jury that they could find dangerousness one of two ways: (1) if they found defendant used or exhibited a deadly weapon or dangerous instrument; or (2) if they found defendant intentionally or knowingly inflicted bodily injury upon another person. Defendant did not object to this instruction. On appeal, he now argues that the trial court committed fundamental error by giving this instruction because, in his view, it amounts to a mid-trial variance of the crime charged and allows the jury to punish him for inflicting serious bodily injury on a victim when he was not so charged.

There is danger inherent in this instruction in sexual assault and related cases. *See State v. Garcia*, 138 Ariz. 211, 673 P.2d 955 (App.1983) (mental and emotional trauma resulting from a rape are insufficient as a matter of law to support a finding of "serious physical injury" in violation of A.R.S. § 13–1204(A)(1)). However, even if the instruction is assumed erroneous, it is harmless here. Fifty-two of the 61 charges against defendant were alleged to be dangerous by virtue of defendant's use of a

---

**3.** The charging document read to the jury included a dangerousness allegation for 52 of the 61 charges against defendant. The only non-dangerous charges were counts 1 through 4 (CR–87–02266), counts 8 through 11 (CR–158085), and count 61 (CR–157378).

knife, and there is uncontradicted evidence that defendant used a knife in every crime in which dangerousness was alleged. Moreover, no evidence of any serious physical injury was presented nor were any arguments made to the jury that any victim suffered any such injury. The state's closing argument connected the allegation of dangerousness only to the presence of a knife. We find no prejudice in this instruction.

Finally, a similar challenge to a dangerous nature instruction has previously been rejected. In *State v. Villafuerte*, 142 Ariz. 323, 690 P.2d 42 (1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1234, 84 L.Ed.2d 371 (1985), a defendant argued that he was deprived of notice that an enhanced sentence was sought because the state alleged dangerousness as "intentional or knowing infliction of serious physical injury," while the trial court also instructed the jurors of dangerousness "involving the use of a dangerous instrument." 142 Ariz. at 329, 690 P.2d at 48. Our supreme court found that defendant had notice that enhanced punishment was being sought and that such notice was all that was required. *Id.* No more is required here.

The judgments and sentences are affirmed.

JACOBSON, P.J., and BROOKS, J., concur.