695 P.2d 1110

**STATE of Arizona, Appellee,**

v.

**James Samuel STOTTS, aka James Aye, Appellant.**

**No. 6265.**

Supreme Court of Arizona,
In Banc.

Feb. 8, 1985.

On Motion for Reconsideration
March 20, 1985.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Division, Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Frederic Dardis, Pima County Public Defender, Regula Case, Asst. Public Defender, Tucson, for appellant.

GORDON, Vice Chief Justice:

On July 8, 1976, appellant James Stotts, aka James Aye, pled guilty to the old-code crime of armed aggravated assault with one prior. See A.R.S. § 13–245(C) (repealed). This conviction arose from an incident in which appellant, armed with a knife, attacked a fifteen year old girl in an apparent attempted sexual assault.

The trial court suspended imposition of sentence and placed appellant on probation for fifteen years. The conditions of probation included appellant's return to the State of Washington, where appellant was wanted as a parole violator. In Washington, appellant would report to the Western State Hospital in Fort Steilacoom, Washington (hereinafter referred to as Western State) for evaluation and in-patient treatment. The court also instructed appellant to "follow all conditions required by the Probation Department."

Appellant, however, neither signed nor received any written conditions at the time probation was imposed. Nevertheless, authorities returned him to Washington to finish that state's parole. There, in late

1976, he entered into the "Sex Offender Treatment Program" at Western State.

When appellant's Washington parole was about to expire in late 1978, Arizona and Washington authorities executed an "Application for Compact Services" and an "Agreement to Return." Appellant signed both documents. The documents at once made Arizona the probation authority and made Washington the state that would supervise the probation. The "Agreement to Return" stated that appellant, in consideration of being granted probation by Arizona, would remain at Western State under the conditions of probation as fixed by either Washington or Arizona. Subsequently, in April of 1979 and July of 1981, appellant signed documents entitled "Interstate Compact—Conditions of Probation and Parole." These documents stated various conditions appellant had to follow in his interstate probation. One of the chief conditions was appellant's participation in the Sex Offender Treatment Program at Western State. Further, the 1981 conditions included successfully completing "all phases of the Western State Sexual Psychopath program."

In 1982, however, Washington authorities concluded that appellant was no longer treatable and was dangerous to be at large. Appellant's therapy group at the hospital voted him out of the program because of his lack of progress. Appellant also expressed a desire to leave the program. Based upon these circumstances, appellant's Washington Probation Officer wrote a "Violations Report" recommending revocation of appellant's probation.

Appellant was returned to Arizona, where a probation revocation hearing was held. After the presentation of evidence, the trial court determined appellant had violated his conditions of probation and ordered it revoked. After a dispositional hearing, the trial court sentenced appellant to not less than ten years and not more than life in prison, the maximum sentence for the old code crime of armed aggravated assault with one prior. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and A.R.S. § 13-4031.

Appellant presents the following issues:

(1) Can appellant's probation be revoked when appellant neither signed nor received conditions of probation at the time probation was imposed?

(2) Did the petition to revoke give sufficient notice of the grounds for revocation?

(3) Did Judge Meehan have authority to revoke appellant's probation, when Judge Veliz, who placed appellant on probation, was still on the Superior Court bench in Tucson?

(4) Did the trial court abuse its discretion when it admitted various exhibits at the violation hearing?

(5) Was there sufficient evidence to support probation revocation?

(6) Is appellant's sentence excessive? Is he entitled to credit for the time he spent on probation?

## WRITTEN CONDITIONS OF PROBATION

A. *The Furnishing of Written Probation Conditions*

■ Appellant maintains that because Pima County gave him no written conditions when his probation was imposed in 1976, his probation cannot now be revoked.

We agree that the trial court and the probation authorities failed to provide appellant with written conditions at the time probation was imposed. Despite our disapproval of this lack of procedure, however, we do not agree that appellant's probation cannot now be properly revoked.

Our Rules of Criminal Procedure require that all conditions and regulations pertaining to probation be in writing. Furthermore, the trial court must supply a copy of such written conditions and regulations to the probationer at the time probation is imposed. Rule 27.1, Ariz.R.Crim.P., 17 A.R.S. *See State v. Williams*, 122 Ariz. 146, 593 P.2d 896 (1979); *State v. Heasley*, 23 Ariz.App. 345, 533 P.2d 556 (1975). Similarly, any modifications or clarifications of

probation regulations must be in writing and a copy given to the probationer. Rule 27.2, Ariz.R.Crim.P., 17 A.R.S. Consequently, a court may not revoke probation for a violation of a condition or regulation of which the probationer has not received a written copy. Rule 27.7(c)(2), Ariz.R. Crim.P., 17 A.R.S.

In the instant case, appellant was placed on fifteen years probation on July 8, 1976. In his sentencing order, the trial judge set out three conditions for appellant's probation:

"(1) That he be returned through the Washington State Parole hold to enter Washington Correctional Center;

"(2) That he be accepted at the Western State Hospital for evaluation and in-patient treatment, and

"(3) That he follow all the conditions required by the [Arizona] Probation Department."

Appellant received no written copy of any conditions of probation at the time of his sentence. In November of 1978, however, the State of Washington applied for an Interstate Compact with Arizona. In this application for Interstate Compact that he signed, appellant agreed to make his home at Western State and to return to Arizona when duly instructed by proper authorities. Appellant also agreed to comply with the conditions of probation as fixed by both Arizona and Washington. Subsequently, in April of 1979, appellant signed and apparently received a copy of an Interstate Compact with Conditions of Probation. He signed and apparently received more conditions in July of 1981. His probation was revoked because of a violation of one of these subsequent written conditions.

Though we emphasize that all probationers should receive written conditions at the time probation is imposed, we do not find the failure to do so in this case invalidated the probation revocation. A combination of four factors justifies this conclusion: first, though appellant's original "unwritten probation" was, upon imposition, unenforceable by revocation, it was valid; second, the subsequent furnishing with appellant of written conditions and his signing of those conditions cured the probation's unenforceability; third, the subsequent written conditions were not more burdensome than the unwritten conditions; and, fourth, there were no due process violations in basing revocation upon the subsequent written conditions.

The validity of appellant's "unwritten probation" finds support in Rule 27. This rule promotes "due process" fairness in enforcing probation. Its purpose is to apprise the probationer of conditions that might be grounds for revocation. *State v. Acosta,* 25 Ariz.App. 44, 540 P.2d 1263 (1975). Nothing in our statutes or rules, however, suggests that the failure to provide the probationer written conditions invalidates the probation. In the instant case, therefore, appellant's "unwritten probation" was valid but unenforceable. Thus, had appellant violated one of the terms of his probation prior to receiving written conditions, the state could not have revoked the probation.

Second, we believe subsequently furnishing appellant with written conditions cured the probation's unenforceability. The November 1978, April 1979, and July 1981 documents that appellant signed gave appellant written notice of his Arizona probation conditions. Assuming appellant received such conditions, his probation was not only valid, but enforceable as well.

Third, comparison of the subsequent written conditions with the original unwritten conditions shows that the subsequent written conditions were not more burdensome than the previous unwritten conditions.[1] Appellant's "unwritten probation" set by the trial judge required appellant to return to Washington to finish his parole,

---

1. We note that had the subsequent written conditions been more burdensome than the previous unwritten conditions, a reasonable basis would have been required to justify the extra burdens. *See Green v. Superior Court,* 132 Ariz. 468, 647 P.2d 166 (1982); *Burton v. Superior Court,* 27 Ariz.App. 797, 558 P.2d 992 (1977).

to enter Western State for in-patient treatment, and to follow all conditions placed upon appellant by the Pima County Probation Department. The subsequent written conditions specified the name of the in-patient program in which appellant was to participate. The 1981 conditions further specified that appellant successfully complete the program. We do not believe that specifying the name of the hospital program and specifying that appellant successfully complete that program added any additional burdens upon the original condition that appellant participate in the program.

Finally, appellant's due process rights were not violated by basing revocation upon these subsequent written conditions. The subsequent written conditions were given to appellant in November of 1978, April of 1979, and July of 1981. Assuming he received copies of these documents, he was on notice of the behavior expected of him. Moreover, the petition to revoke appellant's probation was based upon an alleged violation of these written conditions. The violation did not occur until after appellant purportedly received the conditions. Thus, we find no due process violation. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

B. *Proof That Appellant Received the Conditions*

■ Appellant maintains that there is insufficient proof to show he ever received a copy of the interstate conditions in either 1979 or 1981. Since a probationer must receive a copy of conditions of probation, appellant argues that probation in this case was improperly revoked. We find sufficient evidence in the record to support the trial judge's finding that appellant received a copy of the conditions.

Appellant supports his contention by arguing that Mr. Stinson, a Washington State Parole officer, never actually gave nor saw anyone give appellant copies of the conditions of probation. Rather, Stinson could only testify that appellant signed the conditions and that

"[i]t would be highly unlikely that he would not be provided a copy. Being trained * * * as to the proper procedures, I would say that that would be correct."

■ An appeals court reviewing a revocation of probation proceeding will not reverse any finding of the trier of fact unless that finding is arbitrary and unsupported by any theory of the evidence. *State v. Moore,* 125 Ariz. 305, 609 P.2d 575 (1980); *State v. LeMatty,* 121 Ariz. 333, 590 P.2d 449 (1979). We cannot say the trial court's finding was arbitrary and unsupported by any theory of the evidence. Mr. Stinson's testimony that appellant signed and should have received copies of his probation conditions could raise a reasonable inference that proper procedures were followed in this case and that appellant received copies. *Cf. State v. Watkins,* 125 Ariz. 570, 611 P.2d 923 (1980) (defendant's signature under phrase " * * * acknowledge receipt of a copy of this document" sufficient proof defendant in fact received document).

Appellant argues, however, that *State v. Tucker,* 124 Ariz. 120, 602 P.2d 501 (App. 1979) requires direct, not circumstantial evidence that a probationer received a copy of probation conditions. In *Tucker,* our Court of Appeals stated:

"Mr. Charles Moffitt of the Pima County Adult Probation Department testified he gave a copy of the conditions either to the appellant or to his attorney and that it is the practice to hand the defendant a copy of the conditions when he is placed on probation. There was no testimony to refute the testimony of the probation officer. Contrary to appellant's contention there was proof that he had received a written copy of the conditions of probation."

124 Ariz. at 122, 602 P.2d at 503.

Nothing in *Tucker* requires direct evidence that probationers have received copies of conditions. It merely states that such direct evidence along with circumstantial evidence indicating receipt of conditions

is sufficient to show receipt. Similarly, in the instant case, we hold the trial court's finding, based upon circumstantial evidence alone, is not arbitrary and unsupported by any theory of the evidence.

## WRITTEN NOTICE OF REASONS FOR REVOCATION

### A. *Adequacy of Notice*

■ Appellant next contends that the petition to revoke his probation did not give sufficient notice of the grounds for revocation. Thus, appellant contends, the grounds which are listed do not provide a basis for revocation.

The petition to revoke appellant's probation states:

"The Court is hereby petitioned to:

"Revoke the defendant's probation because there is reasonable cause to believe that Probation Condition Number(s) 5 (and Regulation Number(s)) j thereof has/have been violated in that the defendant received compact supervision as implemented by Washington State Department of Corrections on October 23, 1978. In a report dated November 30, 1982, the receiving probation officer recommended that the defendant's probation be revoked and that he be sentenced and committed to prison. Reasons cited were his lack of initiative, his dishonesty, his continuous compulsive sexual behavior, and his deviant acting out. The Western State Hospital staff, where he has been confined, reports inability to cope further with his obstreperous behavior, is no longer amenable to treatment, and is not safe to be at large. The defendant has indicated a desire to terminate from hospital program."

Initially, appellant maintains that probation condition Number 5 and Regulation Number j do not exist. Because of this fact, appellant contends the petition is fatally defective and the revocation based thereon is invalid. Though conceding the rest of the petition might provide adequate notice, appellant argues that "without knowing the contents of 'Condition 5' and

'Regulation j' it is impossible to know whether the narrative allegations in the petition constitute a breach thereof." We disagree.

■ Appellant is correct in stating that due process requires a probationer be given written notice of grounds for probation revocation. *State v. Rivera*, 116 Ariz. 449, 569 P.2d 1347 (1977); *State v. Marlar*, 20 Ariz.App. 191, 511 P.2d 204 (1973); Rule 27.7(a)(2), Ariz.R.Crim.P., 17 A.R.S. Though the contents of "Condition 5" and "Regulation j" do not appear in the record, we believe the remainder of the petition for revocation provided the necessary notice to appellant. These grounds were his lack of initiative, his dishonesty, his continuous compulsive sexual behavior, and his deviant acting out. Further grounds were his obstreperous behavior at the Western State Hospital, his non-responsiveness to treatment, his desire to terminate treatment, and his danger to society.

These grounds of revocation correspond to appellant's conditions of probation. These conditions included successfully completing all phases of the Western State Sexual Psychopath Program. In specifying appellant's behavioral problems and his ultimate inability and lack of desire to complete the Western State Program, the petition to revoke probation gave appellant adequate notice of the grounds for revocation. Thus, the failure of the record to reveal the contents of "Condition 5" and "Regulation J" is a mere technical, non-reversible error. *See State v. Williams*, 122 Ariz. 146, 593 P.2d 896 (1979) (terms 2 and 4 cited in the petition did not match terms 2 and 4 of the written conditions); *State v. Robledo*, 116 Ariz. 346, 569 P.2d 288 (App. 1977) (petition's incorrect references to first probation instead of second probation nonprejudicial.)

### B. *The Trial Court's Failure to Inform Appellant of Probation Violations*

■ Appellant also contends the trial court's failure to inform him of each alleged probation violation at his arraignment was contrary to Ariz.R.Crim.P. 27.-

7(a)(2) and violated appellant's due process rights. We disagree. First, we note that appellant did not object to the trial court's failure to inform appellant of each alleged violation. Thus, absent fundamental error, appellant has waived this issue on appeal. *State v. Nelson*, 129 Ariz. 582, 633 P.2d 391 (1981).

■ In this case, the judge's failure to inform appellant of each alleged probation violation was not fundamental error. The record reveals that the prosecutor, Mr. Wild, in the presence of appellant and his attorney, stated the allegations in the revocation petition. Furthermore, defense counsel had a copy of the revocation petition and he offered to supply the judge with a copy when the judge stated he had none. Granted, this "procedure" does not conform to Rule 27.7(a)(2)'s requirement that the trial court inform the probationer of each alleged violation. Nevertheless, in view of the evidence showing appellant had adequate notice of the grounds for revocation, the trial judge's failure to follow Rule 27.7(a)(2) was not fundamental error.

C. *The Adequacy of the Trial Court's Statement of Finding of Fact*

■ Appellant also maintains that the trial court violated Rule 27.7(b)(4) by not making "specific findings of the facts which establish the violation [of conditions of probation]." We disagree.

The trial judge followed the mandate of Rule 27.7(b)(4), which requires the court to "make specific findings of the facts which establish the violation and * * * set a disposition hearing." In the instant case, the trial judge discussed the conditions of probation, and then he made the following statement:

> "[H]e's not only voluntarily withdrawn from the program, but he has been terminated from the program by that hospital [Western State].
>
> So the Court finds him in violation of the terms and conditions of his probation. It's ordered that his probation is revoked, it's ordered that a dispositional hearing

be set on December 15 at 9:00 a.m. in Division 16."

Though the trial judge could have made it more clear that he was making findings pursuant to Rule 27.7(b)(4) his statement conforms to the rule's requirements.

THE TRIAL JUDGE'S AUTHORITY TO REVOKE APPELLANT'S PROBATION AND TO RESENTENCE APPELLANT

■ Appellant next argues that Judge Meehan had no authority to revoke appellant's probation nor to sentence him since in 1976 Judge Veliz had taken appellant's plea and had placed him on probation. According to appellant, only the original sentencing court can subsequently revoke probation. The record reveals that Judge Meehan took all of Judge Veliz's cases until Judge Veliz completed Juvenile Court duty. This procedure, appellant asserts, violated Rule 27.5, 27.6, and 27.7(a), and warrants reversal. We disagree.

Appellant made no objection to Judge Meehan's presiding over the revocation hearing. Absent fundamental error, therefore, appellant has waived this objection. *State v. Stoneman*, 115 Ariz. 594, 566 P.2d 1340 (1977). We find no fundamental error. *See* Ariz.R.Crim.P. 27.1, comment ("the term 'sentencing court' is intended to include all divisions of the Superior Court handling criminal cases in that county).

ADMISSIBILITY OF DOCUMENTARY EVIDENCE

Appellant next contends that the trial court abused its discretion in admitting most of the prosecution's documentary evidence. This evidence consisted of various letters and forms tending to support the prosecution's case. On appeal, appellant maintains that this evidence was unreliable hearsay and that the documents were never authenticated.

■ Appellant, then, is making two separate objections. A hearsay objection concerns the reliability of evidence itself; an authenticity objection questions the

form in which the evidence is presented. *See* generally, Cleary, McCormick On Evidence (2d ed. 1972). Appellant, however, made no hearsay objections at trial. Thus, absent fundamental error, he has waived the hearsay objection on appeal. *State v. Stoneman, supra.*

 We find no fundamental error in the admission of the evidence as hearsay. In a probation revocation hearing, "[t]he court may receive any reliable evidence not legally privileged, including hearsay." Rule 27.7(b)(3), Ariz.R.Crim.P., 17 A.R.S. "Reliable" evidence under Rule 27.-7(b)(3) is evidence which is trustworthy and connotes that type of dependency which underlies the generally recognized exceptions to the hearsay rule. *State v. Brown,* 23 Ariz.App. 225, 532 P.2d 167, *approved,* 112 Ariz. 29, 536 P.2d 1047 (1975). Use of hearsay in probation revocation hearings, however, is not limited to traditionally recognized hearsay exceptions. *State v. Flores,* 26 Ariz.App. 400, 549 P.2d 180 (1976); *State v. Brown, supra.* Thus, our courts have permitted use of hearsay in probation revocation hearings "where, in the sound discretion of the trial court, the circumstances are such as to afford a reasonable assurance of the truthfulness of the hearsay * * *" *State v. Brown,* 23 Ariz.App. at 231, 532 P.2d at 173.

 Nothing in the instant case suggests that the documents were unreliable. All of the documents were part of the probation file. Furthermore, appellant failed to challenge the reliability of the evidence. When the reliability of such hearsay evidence goes unchallenged at a probation revocation hearing, the evidence is normally considered reliable. *See State v. Schlenker,* 26 Ariz.App. 401, 549 P.2d 181 (1976); *State v. Salinas,* 23 Ariz.App. 232, 532 P.2d 174 (1975). No fundamental error occurred in admitting the hearsay evidence.

 Proceeding to the authentication question, however, we first note that documentary evidence offered at probation revocation hearings must be authenticated in conformance with our Rules of Evidence. According to Rule 19.3, Ariz.R.Crim.P., 17 A.R.S., "[t]he law of evidence relating to civil actions shall apply to criminal proceedings, except as otherwise provided." Nothing in the Rules of Criminal Procedure indicates that documentary evidence presented at probation revocation hearings should not be authenticated. In reviewing a trial court's decision to admit or exclude evidence, however, we will not disturb the lower court's ruling absent an abuse of discretion. *State v. Robles,* 135 Ariz. 92, 659 P.2d 645 (1983).

 Appellant objected to a total of nine exhibits on authentication grounds. Exhibit 2 is a June 1976 letter purportedly from a Deputy Pima County Attorney to an Assistant Public Defender discussing a plea agreement for appellant. The prosecutor attempted to authenticate the letter by swearing to the Court that he retrieved the letter from the files of the Pima County Attorney.

Rule 901, Rules of Evidence, 17A A.R.S. governs the authentication of evidence. According to Rule 901(a) "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Subsection (b) sets out numerous illustrations of how to authenticate documents.

We cannot discern any 901(b) illustration applying to exhibit 2. The letter is not a public record under 901(b)(7).[2] That illustration provides for authentication of evidence qualifying as "a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, * * * from the public office where items of this

---

**2.** The prosecutor never made clear under which method he was attempting to authenticate this document nor indeed any other document admitted into evidence. Thus, we must assume the various potential bases for admitting the evidence.

nature are kept." The prosecutor's avowal merely established that he retrieved the letter from the files of his office. It did not establish whether the County Attorney was a public office, whether the office had the authority to keep such records, whether the record was properly kept, nor whether the prosecutor had knowledge of these facts.[3] We believe the above showings are required to admit evidence under Rule 901(b)(7). See *State v. Rhymes*, 129 Ariz. 56, 628 P.2d 939 (1981); Cleary, McCormick on Evidence, § 234 at 551 (2d ed. 1972); 5 Weinstein, Weinstein's Evidence, United States Rules § 901(b)(7)[01] (1983). We find no other basis for admitting this exhibit under Rule 901. Absent such a basis, the trial court abused its discretion in admitting exhibit 2.

■ The trial court also abused its discretion in admitting Exhibit 5 which is a handwritten letter purportedly from appellant to "Dear Sir" stamped "received" by the Pima County Adult Probation Department. Appellant objected to admission of Exhibit 5 based upon a lack of authentication. The prosecutor attempted to authenticate the letter through the testimony of a Pima County Adult Probation Department official. The witness stated that his department received the letter, stamped it "received", and kept it in the files of the Probation Department. The court then stated that there was no foundation that appellant actually wrote the letter. Nevertheless, the trial court admitted the evidence because "it's part of the probation file."

That the letter was part of the probation file goes to its reliability as hearsay. Being a part of the probation file, however, does not authenticate the letter. Furthermore, there was insufficient foundation for finding the letter qualified as a public record under rule 901(b)(7). The witness' testimony established that the letter came

from the files of the Pima County Adult Probation Department. As with exhibit 2 above, nothing established the authority of the Department to keep the record, whether the record was properly kept, whether his office was a public office, or whether the witness had any knowledge of such facts. We see no other basis for admitting the letter. Thus, the trial court abused its discretion in admitting exhibit 5.

■ Exhibit 6 is a five page document. Page 1 is a "Reply by Receiving State" accepting supervision of Appellant by Washington; Pages 2–3 are an Interstate Placement Investigation report; page 4 is appellant's "Application for Compact Services;" and page 5 is appellant's "Agreement to Return" to Washington. Defense counsel objected to admission of exhibit 6 based on authentication.

As to the first page of exhibit 6, there was no authentication. No signature appears anywhere on the page, and the document did not qualify as a public record. Further, it has no apparent connection to any other document in exhibit 6 that might have been authenticated. The trial court had no basis for admitting page one of exhibit 6, and, therefore, the trial judge abused his discretion in admitting page one.

■ Pages two and three consist of one page reports with a signature of a Washington State Probation Officer, Mr. Harris. Washington Probation Officer Stinson recognized the signature at the end of the report. Under Rule 901(b)(2) a party can authenticate a document by "[n]on-expert opinion as to the genuineness of handwriting, based on familiarity not acquired for purposes of the litigation." Familiarity with a person's handwriting can be attained by working with that person over a period of time. See *State v. Adamson*, 136 Ariz. 250, 665 P.2d 972 *cert. denied*, ——

---

**3.** We would view with skepticism the claim that the County Attorney is a "public office" that keeps "public records" within the meaning of Rule 901(b)(7). "Public records are usually understood to include acts of legislatures, judicial records, and reports of administrative offices."

Weinstein, 5 Weinstein's Evidence, United States Rules 901(b)(7)[01] (1983). The internal records of the County Attorney are not public records of a public office under rule 901(b)(7), Ariz.R.Evid., 17A A.R.S.

U.S. ——, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983).

In the instant case, Stinson stated he had worked for the Washington State Adult Probation Department for six years. He also stated that Harris was his supervisor and that he recognized his signature. This testimony established a sufficient foundation pursuant to Rule 901(b)(2). The trial court did not abuse its discretion in admitting pages two and three of exhibit 6.

Pages four and five are an Application for Compact Services and an Agreement to Return. At the probation revocation hearing, Stinson recognized both Harris' and appellant's signature at the bottom of both documents. The trial court did not abuse its discretion in admitting this portion of the exhibit. As stated, Officer Stinson was familiar with Harris' signature by virtue of a professional relationship. Furthermore, Stinson also supervised appellant at the Western State Hospital beginning in 1978, and he said he recognized appellant's signature by virtue of that supervision.

Exhibit 7 is a six page document: page one is a copy of a certification signed by Harris stating that the attached copy of the "Agreement to Return" is a true and exact copy of the original on file in Washington. The rest of the document contains the "Agreement to Return," an "Interstate Compact," and a certified "Application for Compact Services." Defense Counsel objected based on authentication.

The prosecution apparently attempted to self-authenticate the copy of the Agreement to Return under Rule 902(4), rules of Evidence, 17A A.R.S. This rule makes admissible, without further evidence of authenticity, certified copies of public records. The rule provides:

"Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

\* \* \* \* \* \*

"(4) Certified copies of public records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with Paragraph (1), (2), or (3) of this rule or complying with any applicable statute or rule."

Rule 902(2), Rules of Evidence, 17A A.R.S. provides for self-authentication of a public document not under seal when the public document bears the signature "in his official capacity of an officer or employee" of any state "if a public officer having a seal and having official duties [in the state] of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine." See *State v. LeMaster*, 137 Ariz. 159, 669 P.2d 592 (1983).

The Agreement to Return in Exhibit 7 fails to meet the requirements of Rule 902(4) and (2). The certification in the instant case is a copy of a certification. The proffered evidence in the instant case is a copy of a certified copy. Rule 902(4), Rules of Evidence, 17A A.R.S. does not provide for self-authentication of copies of certified copies. " 'Certified copies' cannot and does not mean *copies* of certified copies." *State v. McGuire*, 113 Ariz. 372, 375, 555 P.2d 330, 333 (1976). (emphasis in the original.) We find no other authentication for this portion of Exhibit 7. The trial court's admission into evidence of the Agreement to Return in Exhibit 7 was an abuse of discretion.

Page three of exhibit 7 is an "Interstate Compact—Conditions of Probation and Parole" setting out appellant's probation conditions. Stinson recognized appellant's signature and the signature of another Washington parole officer with whom Stinson had worked, Carol Porter. Stinson had previously established his familiarity with appellant's signature, and he again stated he recognized the signature. This testimony was sufficient to authenticate the Interstate Compact under Rule 901(b)(2).

The rest of exhibit seven is an "Application for Compact Services" with an attached "certification." No foundation for admission of this portion of exhibit 7 appears in the record. The attached certification is merely a copy of a certification and therefore cannot qualify as a self-authenticating certified copy. (*See* discussion, *supra*, regarding the "Agreement to Return" portion of Exhibit 7). As no basis for admission of the "Application for Compact Services" appears in the record, the trial court abused its discretion in admitting this portion of exhibit 7.

■ Exhibit 8 is a second "Interstate Compact—Conditions of Probation and Parole" dated April 2, 1979. The prosecution authenticated this exhibit through Stinson's testimony that he recognized appellant's and Harris' signature. This foundation was sufficient for authentication under Rule 901(b)(2). Stinson had previously established his familiarity with both Harris' and appellant's signature, and he again stated he recognized them.

■ Exhibit 9 is a 1981 "Interstate Compact-Conditions of Probation and Parole" dated July 27, 1981 identical to page 3 of exhibit 7. It was authenticated through Stinson's testimony that he recognized appellant's and Carol Porter's signature. Again, as Stinson recognized appellant's and Porter's signatures, the document was properly admitted under Rule 901(b)(2).

## PREJUDICE

■ Having found that the trial court abused its discretion in admitting various exhibits, we proceed to decide whether the court's errors prejudiced appellant. An error in a probation revocation hearing is non-prejudicial if it can be said that the error, by a preponderance of the evidence had no effect on the trier of fact's decision. The question, then, is whether, absent the error, this Court can say by a preponderance of the evidence that the trier of fact would have found the defendant violated his conditions of probation. See *State v. Hunter*, 136 Ariz. 45, 664 P.2d 195 (1983);

*State v. Williams*, 133 Ariz. 220, 650 P.2d 1202 (1982).

■ In the instant case, the trial court improperly admitted the following evidence: (1) exhibit 2, (2) exhibit 5, (3) page 1 of exhibit 6; (4) the Agreement to Return in exhibit 7, (this same agreement to return, however, was properly admitted as part of exhibit 6); and (5) the "Application for Compact Services" in exhibit 7.

Properly admitted, however, were both "Interstate Compact Conditions of Probation and Parole" dated April 2, 1979 and July 27, 1981 and the Agreement to Return dated November 8, 1978. Also properly admitted were numerous documents establishing appellant's violations of these conditions. Moreover, the trial court heard substantial testimony regarding appellant's violation of his conditions of probation. Based upon this admissible evidence, we can say by a preponderance of the evidence that the trier of fact would have found appellant violated his conditions of probation.

## THE ADMISSION OF APPELLANT'S LETTERS TO THE PIMA COUNTY ATTORNEY'S OFFICE

Appellant next contends that exhibits 14 and 15 consisting of letters from appellant to the Pima County Attorney's Office were improperly admitted because they were obtained in violation of appellant's physician-patient privilege and his fifth, sixth, and fourteenth amendment rights. In the letter, appellant states his desire to leave the Western State program and his understanding that quitting the program could mean a return to an Arizona prison. Appellant maintains that because his Washington therapist suggested that appellant write these letters without giving appellant *Miranda* warnings, exhibits 14 and 15 were admitted in violation of his fifth and sixth amendment rights. In addition, appellant argues that the physician-patient relationship was "subverted" by admission of these letters. We reject both arguments.

 Regarding the patient-physician privilege, we find no violation. A.R.S. § 13–4062 provides in pertinent part:

"A person shall not be examined as a witness in the following cases:

"(4) A physician or surgeon, without consent of his patient, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

In *State v. Santeyan,* 136 Ariz. 108, 664 P.2d 652 (1983), we said:

"The [physician-patient] privilege has as its primary function the protection of communications made by the patient to his physician for the purpose of treatment. (citations omitted). 136 Ariz. at 110, 664 P.2d at 654."

In addition, the results of medical tests performed on a defendant for the purpose of diagnosis or treatment, and not at the request of a law enforcement officer or prosecutor are privileged. *State v. Santeyan, supra.*

 The privilege should not attach in the instant case. First, appellant never made clear whether appellant's "therapist" was a psychiatrist or a psychologist. As psychologists are not physicians, the physician-patient privilege does not apply to psychologist's testimony.[4] *See State v. Howland,* 134 Ariz. 541, 658 P.2d 194 (App. 1982). Second, appellant has provided no authority to support his contention that the physician-patient privilege should extend to this situation. Nothing in the physician-patient privilege rule or the cases interpreting the rule justifies such a result.

 Appellant's argument that his therapist should have given him *Miranda* warnings prior to suggesting that appellant write the letters is equally meritless. Appellant has failed to show that the suggestion to write letters was a custodial interrogation as required to invoke the protections of *Miranda. See Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297

(1980). Furthermore, we have previously held that statements a probationer makes to a probation officer about crimes the probationer committed during probation are admissible in a revocation hearing regardless of whether the probationer has been read his *Miranda* rights prior to the admission. Thus, there was no need for *Miranda* warnings in this case. *State v. Rivera,* 116 Ariz. 449, 569 P.2d 1347 (1977); *State v. Magby,* 113 Ariz. 345, 554 P.2d 1272 (1976); *See also State v. Cawley,* 133 Ariz. 27, 648 P.2d 142 (App.1982).

## SUFFICIENCY OF THE EVIDENCE

Appellant next contends that the evidence was insufficient to establish a breach of the conditions of probation. In essence, appellant contends that he had a viable alternative plan of treatment he was willing to undergo instead of continuing with Western State. Thus, appellant argues, since he had a good faith alternative plan, the evidence is insufficient to establish a violation of a condition of probation. We disagree.

 An appeals court reviewing a revocation of probation proceeding will not reverse any finding of the trier of fact unless that finding is arbitrary and unsupported by any theory of the evidence. *State v. Moore, supra; State v. LeMatty, supra.* We cannot say the trial court's finding that appellant violated his conditions of probation was arbitrary and unsupported by any theory of the evidence. The evidence established that one of appellant's conditions of probation was successfully completing the sexual psychopath program at Western State. Further evidence established that appellant was not making progress in the program and that he continued his deviant sexual behavior. Consequently, his "therapy group" at the hospital voted him out of the program. Appellant himself also desired to leave the hospital program.

---

**4.** Appellant has made no claim of privilege pursuant to A.R.S. § 32–2085 (privileged communications between a certified psychologist and patient). We believe, however, that the privilege in A.R.S. § 32–2085 is inapplicable to letters written by a patient to third parties at the suggestion of his psychologist.

Regarding appellant's proposed alternative plan, there was evidence this plan was inappropriate for appellant. Probation Officer Stinson testified that he would not, under any circumstances, have referred appellant to two of the psychotherapists appellant offered to see as part of his alternative plan. Regarding the other psychotherapists appellant proposed seeing, Stinson stated it would be highly unlikely they would take appellant "since they do not accept any failures from Western State Hospital." Furthermore, in a "Violation Report" Stinson characterized appellant's plan as "very unrealistic." Consequently, in his report, Stinson concluded that because of appellant's "lack of ability to perform satisfactorily while in the Western State Hospital Sexual Psychopath Program and his unrealistic plans for the future, I do not believe that [appellant] is a suitable candidate for community supervision."

Moreover, despite appellant's "good faith" submission of an alternative plan, he never petitioned the trial court for modification of his conditions of probation under rule 27.2, Ariz.R.Crim.P., 17 A.R.S. This rule is "[t]he remedy for a probationer who questions the clarity of the terms of his or her probation." *State v. Watkins*, 125 Ariz. 570, 572, 611 P.2d 923, 925 (1980).

Based upon this evidence, the trial court could have rationally concluded that appellant violated a condition of probation and that his alternate plan for future care was neither viable nor seriously proposed. Thus, the trial court's finding that appellant violated his conditions of probation was not arbitrary or unsupported by any theory of the evidence.

## THE SENTENCE

### A. Length of the sentence.

Appellant next contends that the trial court imposed an excessive sentence. The trial court sentenced appellant to not less than ten years and not more than life imprisonment. Appellant urges this Court to reduce the sentence pursuant to A.R.S. § 13-4037. This statute allows us to reduce a sentence when, in our opinion, the

sentence imposed is greater than ought be imposed under the circumstances of the case. Appellant maintains that two facts warrant this Court putting a "top number" on the sentence: (1) that appellant realizes he is a person in need of treatment, and (2) that the trial court had no intention of making any release decision itself; rather it left that decision to the Board of Pardons and Paroles.

At the outset, we note that trial courts have broad discretion in sentencing convicted defendants. If a sentence is within statutory limits, it will not be modified or reduced unless, from the circumstances, it clearly appears the sentence was an abuse of the trial court's discretion. *State v. La Mountain*, 125 Ariz. 547, 611 P.2d 551 (1980). Further, an abuse of discretion in sentencing will not be found absent a decision characterized by arbitrariness, capriciousness, or failure to conduct an adequate investigation into the facts relevant to sentencing. *State v. Ramos*, 133 Ariz. 4, 648 P.2d 119 (1982).

Where the trial judge has discretion as to the sentencing limits, he should consider the general character of both the offense charged and of the party convicted. *State v. Patton*, 120 Ariz. 386, 586 P.2d 635 (1978). Thus, as we said in *Patton:*

"In reviewing the propriety of the trial judge's discretion, we must look to the same considerations. The defendant's age, physical health, cooperative attitude, moral character, and prior criminal record or lack thereof, are all valid considerations. The non-violent nature of the crime, the depravity of the offense, the degree of defendant's participation, and the sentences given to co-offenders, have all been used to evaluate the circumstances of the crime itself."

120 Ariz. at 389, 586 P.2d at 638 (citations omitted).

In the instant case we cannot say the trial court's decision was characterized by arbitrariness, capriciousness, or failure to conduct an adequate investigation into the facts relevant to sentencing. Appellant

was being punished for the old-code crime of aggravated assault with a prior while armed. A.R.S. § 13–245 (repealed). The maximum sentence for this crime was not less than ten years and not more than life. Our review of the record reveals appellant's long history of dangerous sexual assaults before imposition of probation. The record also reveals incidents involving potentially dangerous sexual assaults during appellant's probation. Appellant's Washington probation officer testified that these incidents occurring during appellant's probation would have escalated to violent sexual assaults had appellant not been under supervision. Further, the record reveals almost no hope that appellant will stop such behavior.

In contrast, there appears in the record no mitigating factors. Neither his age, forty, nor his health are mitigating factors in this case. Though appellant has expressed a cooperative attitude, such an attitude does not outweigh his dangerous nature. The trial court did not abuse its discretion in imposing the sentence.

B. Credit for Time Spent at the Western State Hospital in Washington State.

 Appellant also maintains that he is entitled to credit for the seven and a half years he has spent at Western State. According to appellant, A.R.S. § 13–709(B) supports his position. It states:

"B. All time actually spent in custody pursuant to an offense until the prisoner is sentenced to imprisonment for such offense shall be credited against the term of imprisonment otherwise provided for by this chapter."

We disagree with appellant's argument. The trial court imposed probation upon appellant on July 8, 1976. The old criminal code was in effect at that time. Since punishment following probation revocation is not for the probationary breach, but is punishment on the original charge, the old criminal code applies to appellant's sentence. *State v. Jones*, 128 Ariz. 378, 625 P.2d 967 (App.1981). Under the old criminal code a defendant was not entitled to

sentence credit for time spent on probation. See A.R.S. § 13–1652 (repealed); *State v. Jones, supra; State v. Benton*, 19 Ariz. App. 333, 507 P.2d 135 (1973). The trial court, therefore, did not err in failing to credit appellant with the time he spent on probation.

Pursuant to A.R.S. § 13–4035, we have searched the entire record for fundamental error, and we have found none. The revocation of probation and the sentence imposed are affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

## ON MOTION FOR RECONSIDERATION

GORDON, Vice Chief Justice:

Appellant moved that this Court reconsider its opinion filed February 8, 1985. His motion has brought to our attention several incorrect statements in our decision that we will address in this supplemental opinion.

In the portion of our opinion concerning the trial court's failure during the arraignment to inform appellant of his probation violations, we noted that appellant never objected to this procedure, and we held that no fundamental error occurred because the prosecutor's summary of the alleged violations gave appellant adequate notice of the reasons for the probation revocation. We also found that defense counsel had a copy of the revocation petitions and that he offered to give the trial judge a copy.

Appellant has properly pointed out, however, that it was not defense counsel who had a copy of the petition to revoke but a Pima County Probation Officer. Appellant also alleges that he had no defense counsel at the arraignment.

Addressing appellant's second argument first, we disagree that appellant was unrepresented at the arraignment. The trial court appointed a public defender, Mr. Gan, to represent appellant for the purposes of the arraignment. Counsel did not object to being appointed for the hearing. Though appellant maintains that Mr. Gan knew

nothing about the case or the proceeding, the record does not support this argument.

Secondly, though it was actually a Pima County Probation Officer who had a copy of the revocation petition and offered it to the trial judge, we do not believe fundamental error occurred when the trial court failed to inform appellant of the alleged probation violation. The prosecutor's summary of the alleged violations gave appellant adequate notice of the reasons for his probation revocation. Our original erroneous belief that defense counsel had and offered a copy of the revocation petition to the trial judge was only an additional reason why we believed appellant had adequate notice.

 In the next argument we consider,[1] appellant correctly states that this Court erred in finding that Probation Officer Stinson supervised appellant beginning in 1978. As asserted by appellant, the record reflects that Stinson did not begin supervising appellant until September of 1982 and did not come into personal contact with appellant until October of 1982. Thus, appellant argues that Stinson had no knowledge upon which to base his identification of appellant's signature on various exhibits admitted at trial.

We disagree. Though limited, Stinson's exposure to appellant was sufficient enough for the trial court to allow him to identify appellant's signature. The record reflects that Stinson began supervising appellant in September of 1982 and that he reviewed appellant's file at that time. Stinson made personal contact with appellant on October 6, 1982, when the hospital voted appellant out of treatment. The file Stinson reviewed contained numerous examples of appellant's signature. There was no need, as appellant contends, for Stinson to have actually seen appellant sign his name. *See* M. Udall & J. Livermore, Arizona Law of Evidence § 111, at 222 (2d ed. 1982). The trial court did not abuse its discretion

in finding that Stinson had adequate knowledge to identify appellant's signature.

We reject appellant's arguments regarding our disposition of the credit for time spent on probation except to note that our cite to former A.R.S. § 13–1652(C) should be to former A.R.S. § 13–1657(C). The revocation of probation and the sentence imposed are affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

identified the signatures of Probation Officer Carol Porter on Exhibits 7 and 9.

---

1. We have considered and rejected appellant's argument that the record does not support our finding that Probation Officer Stinson properly