NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ELIZABETH ANNE LEMOLE, *Appellant.*

No. 1 CA-CR 18-0331
FILED 2-19-2019

Appeal from the Superior Court in Navajo County
No. S0900CR99000136
The Honorable Robert J. Higgins, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

The Rigg Law Firm, PLLC, Pinetop
By Brett R. Rigg
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Kenton D. Jones and Chief Judge Samuel A. Thumma joined.

_____

**W I N T H R O P**, Judge:

**¶1**　　　　Elizabeth Lemole appeals revocation of her probation, claiming the revocation was based on a finding she had violated conditions of probation that had not previously been provided to her in writing. Because Lemole has shown no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　In 1999, Lemole was indicted in Arizona for one count of fraudulent schemes and artifices, and forty-nine counts of forgery. Two years later, she was convicted of two counts of passing bad checks in Pennsylvania, and one count of aggravated motor theft in Colorado. In 2003, while incarcerated in Pennsylvania, Lemole pleaded guilty in Arizona to the count of fraudulent schemes and twenty-two counts of forgery—the Mohave County superior court suspended her sentence and placed her on seven years' probation, to begin only after completing her non-Arizona sentences.[1]

**¶3**　　　　After finishing her Pennsylvania sentence, Lemole went to Colorado to serve her sentences of incarceration and probation there. While Lemole served her sentences in Colorado, Lemole's Arizona probation officer in September of 2011 sent "implementation" documents to her Colorado probation officer. According to a Review and Acknowledgment of Terms of Probation containing Lemole's signature, those implementation documents included her terms and conditions of probation, instructed

---

[1]　　　Although Lemole appeared telephonically at the Mohave County hearing where she was placed on probation, the resulting minute entry states, in part: "The written terms and conditions of probation are handed to the Defendant for explanation, acceptance, and signature. . . . The Defendant is advised concerning the consequences of failure to abide by the conditions of probation."

Lemole to "[o]bey all laws and . . . not engage in any criminal activity," and provided details as to the length of probation and reporting requirements. These implementation documents were returned to Arizona bearing Lemole's signature. Lemole later testified to signing the implementation documents; she also testified, however, that she never signed her uniform conditions of probation, which she claimed she never received until 2013.

¶4        Lemole's Arizona probation began in April of 2011, when she completed her Colorado sentences. Three years later, Lemole again committed crimes in Pennsylvania, where she was charged with five counts of passing bad checks and one count of theft by unlawful taking or disposition. She was later convicted of four counts of bad checks, and sentenced to prison. As relevant here, in July 2014, Lemole's Arizona probation officer petitioned the court to revoke her probation, citing her Pennsylvania convictions. Following a series of evidentiary hearings, the court found that Lemole had violated her probation by committing new offenses in Pennsylvania, and on that ground, revoked her probation and sentenced her to aggravated, concurrent prison terms of 10 and 2.5 years.

¶5        Lemole timely appealed revocation of her probation. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).

## ANALYSIS

¶6        We review a revocation of probation for abuse of discretion and will reverse only upon a finding of "capriciousness or arbitrariness on the part of the trial court." *State v. Sanchez*, 19 Ariz. App. 253, 254 (1973) (citing *State v. Douglas*, 87 Ariz. 182 (1960)).

>    *I.    Whether a Probationer Must Receive a Copy of Her Probation's Terms and Conditions for Probation to be Revoked for a Violation of the Law*

¶7        Section 13-901(C) and Arizona Rule of Criminal Procedure ("Rule") 27.1 together detail when and how the court may revoke probation. Section 13-901(C) states in relevant part that "if the defendant commits an additional offense or violates a condition, [the court] may revoke probation in accordance with the rules of criminal procedure." Rule 27.1, which dictates revocation implementation procedures, states that "[t]he court and probation officer must give the probationer a written copy of the conditions and regulations" of her probation.

**¶8**          Lemole contends Rule 27.1 requires she be provided the terms and conditions of her probation before such probation may be revoked for any reason, including the further violation of criminal statutes, and that the alleged failure to do so constitutes fundamental error. The State urges us to reject this reading of the Rule, and argues that *State v. Acosta*, 25 Ariz. App. 44 (1975), provides that when probation is revoked because of a subsequent violation of criminal law, Rule 27.1 does not prohibit the court from revoking probation even if the defendant did not receive a copy of the terms and conditions of her probation.

**¶9**          Lemole's implication that she was not on notice that the terms of her probation prohibited her from violating the law, or that her probation could be revoked as a result of such subsequent criminal behavior, is unsupportable. At a November 19, 2015 hearing, Lemole testified that she signed the implementation documents (which included that requirement) provided to her in September 2011. Lemole also testified to receiving her uniform conditions of probation by the end of 2013, months before her probation officer alleged she violated probation by committing the new Pennsylvania offenses.

**¶10**          Regarding the application of A.R.S. § 13-901(C), we first note the legislature's care in disjunctively stating the two qualifying grounds for revocation: (1) committing an additional offense, *or* (2) violating a condition of probation. The disjunctive nature of the statute clearly indicates that commission of an additional criminal offense, even if not explicitly forbidden by the conditions of probation, is sufficient grounds to revoke probation. *See State v. Crowder*, 103 Ariz. 264, 265 (1968) (interpreting A.R.S. § 13-1657, the predecessor to A.R.S. § 13-901).

**¶11**          The court must further ensure, however, that it revokes probation "in accordance with the rules of criminal procedure." A.R.S. § 13-901(C). In *Acosta*, this court addressed the application of Rule 27.1 when a court revokes probation for violation of a criminal law, stating:

> Rule 27.1 does not require . . . that a probationer be furnished with a copy of a written prohibition against violation of the laws. The purpose of Rule 27.1 as to written conditions and regulations is to apprise a probationer of [a]dditional conditions which might be grounds for revocation other than the general conditions enumerated in A.R.S. Sec. 13-1657. . . . It is these special conditions and regulations that must be in writing and furnished to the probationer so that . . . [the defendant] cannot later be heard to say that he did not

4

understand and concomitantly will be protected from arbitrary action on the part of probation officers.

25 Ariz. App. at 45 (internal footnote, quotations, and citation omitted). To be sure, *Acosta* addressed the now-repealed predecessor statute to A.R.S. § 13-901(C). Because the two statutes are sufficiently similar, however, we find the reasoning in *Acosta* regarding the applicability of Rule 27.1 to still be good law. *Compare* the operative language of the repealed statute, A.R.S. § 13-1657 (allowing revocation when the defendant is "violating the conditions of his probation, *or* engaging in criminal practices, or has become abandoned to improper associates, or a vicious life") (emphasis added), *with* the operative language of the successor statute, A.R.S. § 13-901 (allowing revocation when the defendant "commits an additional offense *or* violates a condition" of probation) (emphasis added); *see also State v. Brodie*, 127 Ariz. 150 (App. 1980) (upholding under A.R.S. § 13-901 the court's rule regarding offsetting pre-sentence jail time against probation under A.R.S. § 13-1657).

¶12 Lemole argues that our Supreme Court's ruling in *State v. Stotts*, 144 Ariz. 72 (1985), effectively overturned *Acosta*. In *Stotts*, however, the Supreme Court held only that "a court may not revoke probation for a violation of a condition or regulation of which the probationer has not received a written copy." *Stotts*, 144 Ariz. at 78 (citations omitted). There, the defendant was charged with violating a specific condition of probation that he successfully complete an in-patient treatment program in the State of Washington. *Id.* at 77. Stotts did not receive a copy of the terms and conditions of his probation at the time of sentencing, as required by Rule 27.1. *Id.* at 76. He did, however, receive and acknowledge the applicable terms and conditions some years later at the time transfer of his probation from Washington to Arizona was in process. *Id.* at 77. The Supreme Court held that, after receipt, the defendant was on notice of the behavior expected of him, and this cured any due process violation, as the probation violation did not occur until after Stotts received the terms and conditions. *Id.* at 79.

¶13 The record in this case is disputed as to whether Lemole received the terms and conditions of her probation at the time of imposition, but, similar to *Stotts*, there is evidence, including Lemole's own testimony, that she indeed received those terms and conditions of probation some years later from a Colorado probation officer as part of a process to transfer responsibility for supervision of the Arizona probation term to Colorado authorities. We further note that *Stotts* cites *Acosta* with approval and does not comment on or otherwise overrule its clear holding that a revocation

may proceed for a probationer's post-sentencing violation of criminal law notwithstanding the failure of the State to provide a copy of the terms and conditions of probation at the time of sentencing. *See id.* at 78. Finally, we note that while Lemole later denied receiving a copy of the terms and conditions of probation from the Colorado probation officer, there is documentary evidence showing otherwise, and the court in *Stotts* specifically held that circumstantial proof of receipt of probation conditions is sufficient. *Id.* at 79-80.

**¶14** We hold that, under the authority of *Acosta*, Arizona's Rules of Criminal Procedure do not require that Lemole be provided a copy of the conditions of her probation before the court may revoke such probation for a subsequent violation of criminal law. In the alternative, under the authority of *Stotts*, there was sufficient circumstantial evidence in the record to show that Lemole was advised, at least by 2011, as to the terms and conditions of her Arizona probation—specifically, the prohibition against engaging in further criminal behavior—and this cured any violation of Rule 27.1 before Lemole engaged in the criminal conduct that led Arizona authorities to file the amended petition to revoke in 2014.

**¶15** Accordingly, we find no error occurred, fundamental or otherwise. *See State v. Escalante*, 245 Ariz. 135, 141, ¶ 21 (2018) (stating the first step in fundamental error review is determining whether error occurred). We note, however, that even if error had occurred—that is, if the State had been required to provide Lemole her probation conditions in writing for her probation to be revoked for subsequent criminal offenses—Lemole would still be required to show prejudice. *Id.*[2] Even if the court did not comply with Rule 27.1, however, Lemole fails to show prejudice because the record reflects she did, in fact, receive her conditions of probation before the date of the alleged violation. Therefore, there was no reversible fundamental error.

## II. *Admission of the Implementation Documents*

**¶16** Finally, Lemole asks this Court to determine whether the superior court properly admitted the signed implementation forms. While

---

[2] *Escalante* holds that "[a] defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." If found, the first two require a subsequent finding of prejudice; the third is inherently prejudicial. *Escalante*, 245 Ariz. at 142, ¶ 21.

it is true that, at a March 2016 evidentiary hearing, Lemole's attorney objected to the documents' admission for lack of foundation, such objection was too late. At an earlier evidentiary hearing in November of 2015, the very same documents were admitted into evidence without any objection by Lemole or her counsel. As such, the court's rejection of the untimely foundational objection in the 2016 hearing was entirely proper. We further note that in her own testimony, Lemole admitted having received and signed the documents in question. In short, we perceive no error, fundamental or otherwise.

## CONCLUSION

**¶17**      The superior court did not abuse its discretion or otherwise err. We affirm revocation of Lemole's probation.



AMY M. WOOD • Clerk of the Court
FILED:  AA