NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JEREMY FREDERICKS, *Appellant*.

No. 1 CA-CR 23-0165
FILED 07-18-2024

Appeal from the Superior Court in Navajo County
Nos. SO900CR202101151, SO900CR202101153
The Honorable Joseph Samuel Clark, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball, Alexandra Timmer*
*Counsel for Appellee*

The Lara Group, PLC, Mesa
By Matthew Lara
*Counsel for Appellant*

---

\*     Certified limited practice student. *See* Ariz. R. Sup. Ct. 39(c).

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**C A T T A N I**, Judge:

¶1　　　　Jeremy Fredericks appeals the superior court's order revoking his intensive probation and imposing prison sentences. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　In late 2021, Fredericks pleaded guilty to two counts of misconduct involving weapons (prohibited possessor) and one count of criminal impersonation. The superior court suspended sentence and imposed three years' intensive probation. His conditions of probation included requirements that he "obey[] all laws," that he "not possess or use illegal drugs," and that he "not consume . . . any substances containing alcohol."

¶3　　　　In mid-April 2022, however, Fredericks submitted a urine sample that tested positive for methamphetamine. Less than two weeks later, he submitted another urine sample, which again came back positive for methamphetamine.

¶4　　　　In early May, Fredericks's probation officer prepared a written probation violation report detailing several alleged violations (including the two drug screens positive for methamphetamine) and offered Fredericks two weeks to come into compliance. The probation officer reviewed the report with him and, although he orally referred to the violations as "bogus," Fredericks ultimately admitted the violations, signing the admission form. Just under a week after that, Fredericks submitted a third urine sample, which was negative for methamphetamine but showed the presence of alcohol.

¶5　　　　Fredericks's probation officer filed a petition to revoke soon thereafter, alleging several probation violations involving, as relevant here, positive drug screens for methamphetamine and alcohol. After a contested probation violation hearing, the superior court found Fredericks had violated written conditions of his probation prohibiting criminal activity,

2

use of illegal drugs, and consumption of alcohol, specifically finding that Fredericks had used methamphetamine on the two occasions alleged. The court revoked probation and sentenced Fredericks to a total of 6.75 years' imprisonment. Fredericks timely appealed, and we have jurisdiction under A.R.S. § 13-4033(A). *See also State v. Regenold*, 226 Ariz. 378, 378, ¶ 1 (2011).

**DISCUSSION**

**¶6** Fredericks challenges the superior court's finding that he violated probation. He does not independently challenge the court's decision to revoke probation due to those violations or the sentences imposed.

**¶7** The State must prove a probation violation by a preponderance of the evidence. Ariz. R. Crim. P. 27.8(b)(3); *see also State v. Smith*, 112 Ariz. 416, 419 (1975) (violation proven when evidence shows "'reason to believe' that the individual is 'violating the conditions of his probation or engaging in criminal practices'") (citation omitted). The court may consider "any reliable evidence, including hearsay, that is not legally privileged." Ariz. R. Crim. P. 27.8(b)(3); *State v. Stotts*, 144 Ariz. 72, 82 (1985) (describing reliable evidence for these purposes as evidence that is "trustworthy"). On review, we consider the facts in the light most favorable to sustaining the court's findings and will uphold the finding of a violation unless it is "arbitrary or unsupported by any theory of evidence." *State v. Vaughn*, 217 Ariz. 518, 519, 521, ¶¶ 3 n.2, 14 (App. 2008) (citations omitted).

**¶8** Fredericks first argues that the court erred by finding he had received a written copy of his probation conditions. Arizona law requires that probationers be given a written copy of the conditions of probation, and probation may be revoked only for violation of the conditions received in writing. Ariz. R. Crim. P. 27.1(b), 27.6, 27.8(b)(1), (c)(2); *see also Stotts*, 144 Ariz. at 77.

**¶9** Here, although a copy of the conditions of probation was not submitted as an exhibit at the violation hearing, the court took judicial notice that Fredericks was on probation in the underlying cases. *See* Ariz. R. Evid. 201. And the court's records—those that establish the judicially noticed fact—reflect that the terms and conditions of probation were given to Fredericks in writing, that he signed them, and that copies were provided to him in open court. *See State v. Gross*, 201 Ariz. 41, 45, ¶ 13 (App. 2001) (court may take judicial notice of its records); *cf. State v. McGuire*, 124 Ariz. 64, 66 (App. 1978) (court of appeals may take judicial notice of anything of

which the superior court could take judicial notice, even if the superior court was not asked to do so).

¶10        Moreover, Fredericks twice signed probation implementation documents (admitted as exhibits at the violation hearing) that "acknowledge[d] receipt of . . . a copy of the terms and conditions of Probation," and his probation officer testified that he did not indicate he was unaware of or confused about the conditions of his probation. Accordingly, the court had an ample basis to find that Fredericks received the conditions of his probation in writing.

¶11        Fredericks next argues that the court erred by admitting his positive drug screen results, asserting that the evidence was unreliable and thus inadmissible. *See* Ariz. R. Crim. P. 27.8(b)(3). Fredericks highlights that his probation officers did not follow him into the bathroom to view him providing the urine samples, which he characterizes as a break in the chain of custody. But the probation officers described their precautions against tampering with the urine samples (checking Fredericks and the restroom for contraband, using an otherwise-locked bathroom, listening at the door as he provided the sample, and a tamper-evident seal on the sterile cup). The State "need not disprove 'every remote possibility of tampering'" to show the continuity of possession necessary to establish a chain of custody, *State v. Spears*, 184 Ariz. 277, 287 (1996) (citation omitted), and the precautions described support the superior court's assessment of admissibility.

¶12        Fredericks further asserts that lack of evidence about policies and procedures of the out-of-state laboratory performing the drug screens, and the fact that his urine samples were unrefrigerated for some period before being tested, undermine the reliability of the test results. Urinalysis reports, however, are generally deemed reliable and admissible (provided there is evidence of how the sample was collected) so long as there is "nothing to indicate that [the] report [is] inaccurate, or that the hospital testing procedures were generally unreliable." *State v. Carr*, 216 Ariz. 444, 446, ¶ 5 (App. 2007) (alterations in original and citations omitted). Fredericks offers no such indication of inaccuracy or unreliability; thus, the State was not required to prove the reliability of specific testing procedures or technician qualifications to support admissibility at a probation violation hearing. *See id.*

¶13        Fredericks's samples were collected in the presence (albeit not in view) of probation officers under controlled conditions, sealed and labeled with his initials and a code identifying the samples as his, and

stored in a secure location before transmission to the laboratory. After testing, the results were provided directly to the probation department with documentation reflecting Fredericks's name and the identification code from the sample provided, with no indication the sample had been tampered with. And in any event, Fredericks signed a written violation report admitting the methamphetamine-based violations. Even if he initially marked the wrong option on the form or called the violations "bogus" in frustration, the probation officer who witnessed him signing the report confirmed his admission. The superior court thus did not err by considering the urinalysis results reliable and admitting them in evidence.

**CONCLUSION**

¶14            We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV